IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY LAWRENCE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THORNTON TOWNSHIP, an Illinois ) <br> municipal corporation; TIFFANY A. ) <br> HENYARD, in her Individual Capacity; and ) <br> KEITH FREEMAN, in his individual ) <br> capacity, ) <br> ) <br> Defendants. ) | Case No. 24 cv 05054 <br><br> Judge Joan H. Lefkow |

**OPINION AND ORDER**

Larry Lawrence brings this civil rights action[1] against Tiffany A. Henyard, Keith Freeman, and Thornton Township,[2] alleging that he was terminated from his position with Thornton Township in retaliation for exercising his First Amendment rights to free speech and political non-affiliation. Henyard and Freeman have moved under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim. For the reasons stated herein, the motion to dismiss (dkt. 14) is denied in part and, as explained in footnote 4 below, granted in part with leave to replead.

---

[1] The claim arises under 42 U.S.C. § 1983. The court has jurisdiction under 28 U.S.C. § 1343. Venue is proper under § 1391(b).

[2] Thorton Township has answered the complaint. (Dkt. 13.)

**BACKGROUND**[3]

Lawrence first began working for Thornton Township in 2001, where he most recently held the position of Youth Program Manager in the township's Youth and Family Services Department. He was also president of the Dolton West School District 148 Board of Education in 2017. At the time Lawrence filed this complaint in June 2024, Henyard served as Mayor of the Village of Dolton and as Township Supervisor. Freeman served as Village Administrator and was the township's Municipality Manager. Both were Lawrence's superiors and had "final policymaking authority" to hire and fire employees of Thorton Township.

Several times during the summer of 2023, Henyard met with Lawrence and asked him to retain Thorton Township's attorney as the attorney for the Dolton school board. When Lawrence asked her, "Why would I do that?", Henyard replied, "You would be supporting me" and "[t]o show support for me." (Dkt. 1 ¶ 25.) Lawrence understood her requests to be for political support.

On September 25, 2023, Freeman invited Lawrence to what he thought would be a virtual "meet and greet" with Thorton Township's attorney. (*Id*. ¶¶ 26–27.) Lawrence did not know that three other school board members, constituting a quorum of the school board, would be present on the call. Lawrence believed that Henyard and Freeman expected that the three school board members would vote in favor of retaining the Township's attorney for the school board and wanted Lawrence to do so as well to reach a majority. When Freeman asked him during the call whether he would vote in support, Lawrence responded that he would not because he was satisfied with the school board's present attorney. Nevertheless, he told Freeman that he would

---

[3] When resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Northwestern Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

consult with the school board on the issue. Thorton Township's attorney appeared upset by Lawrence's response and left the virtual meeting abruptly. As promised, Lawrence discussed the issue of retaining the township's attorney with the rest of the school board. The school board opted not to retain the township's attorney, and Lawrence informed Henyard and Freeman of that decision.

On October 5, 2023, Lawrence received an email from Thorton Township's human resources department stating that his employment as Youth Program Manager was being terminated. By that point, Lawrence had worked for the Township for twenty-two years without once having been disciplined. Henyard hired her sister-in-law and later another relative to take Lawrence's position. Several other township employees were also terminated for refusing to support Henyard politically. In particular, another employee who also refused to retain Thorton Township's attorney for another entity, the Thorton Township Trustees of Schools, was terminated. Lawrence filed this lawsuit on June 18, 2024.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. To withstand the motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes*, 63 F.4th at 630.

## ANALYSIS

Lawrence claims that Henyard and Freeman terminated him in retaliation for exercising his rights to free speech (Counts III and V)[4] and political non-affiliation (Counts IV and VI). Henyard and Freeman argue that Lawrence has not pleaded facts sufficient to state a First Amendment claim, as he has not established that his speech was a "motivating factor in his termination." (Dkt. 14 at 1.)

### I. First Amendment Retaliation Claim

A person who has alleged that he was removed from public employment for political reasons may state a prima facie claim of First Amendment retaliation by demonstrating, first, that his conduct was constitutionally protected and, second, that the protected conduct was "a motivating factor in the challenged employment action." *Bisluk* v. *Hamer*, 800 F.3d 928, 933 (7th Cir. 2015).

Lawrence contends that his refusal to support Henyard politically by retaining her preferred attorney for the school board constituted constitutionally protected speech. Defendants do not deny that, as stated in *Hermes* v. *Hein*, 742 F.2d 350, 353 n.3 (7th Cir. 1984), "political nonaffiliation is a right protected under the first amendment." *See Soto* v. *Yarbrough*, No. 18-C-4337, 2019 WL 3555106, at *2–3 (N.D. Ill. Aug. 5, 2019) (denying motion to dismiss where plaintiff alleged being fired for being politically unaffiliated with the defendant); *Doyle* v. *City of Chicago*, 943 F. Supp. 2d 815, 822–23 (N.D. Ill. 2013) (recognizing on a motion to dismiss that

---

[4] Lawrence pleads distinct free speech claims under the First Amendment (*see* Counts III and V), but those are indistinguishable from his claims for political non-affiliation. Apart from stating that Lawrence's "refus[al] to support Ms. Henyard politically" constitutes protected speech, the complaint contains no other references to specific speech that may form the basis of a retaliation claim. (Dkt. 1 ¶¶ 56, 68). Further, Lawrence collapses the two sets of claims into one in his response to defendants' motion to dismiss. (Dkt. 17 at 6.) Accordingly, the court will grant the motion to dismiss without prejudice to replead with greater clarity as to Counts III and V.

4

police officers' refusal to affiliate politically with a mayor constituted protected speech). Therefore, Lawrence has satisfied the first prong of the test for first amendment retaliation.

Next is causation. At the motion to dismiss stage, a plaintiff need only "mak[e] an initial showing that speech was a motivating factor in the employer's adverse decision." *Christianson* v. *Yarbrough*, 2015 WL 1607437, at *2 (N.D. Ill. April 2, 2015) (internal citation omitted). A plaintiff may present circumstantial evidence to support a retaliation claim; such evidence can include "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group," *Kidwell* v. *Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (citation omitted), as well as a "pattern of political patronage." *Schmoeller* v. *Village of Island Lake*, 324 F. Supp. 3d 983, 989 (N.D. Ill. 2018).

Lawrence has stated facts supporting his allegation that his decision not to offer Henyard political support by way of retaining her preferred attorney for the school board was a motivating factor in his subsequent termination. Indeed, Henyard explicitly told Lawrence that retaining the Thorton Township's attorney would be a gesture of political support, which Lawrence alleges that he understood.

Beyond this explicit representation, Lawrence argues that the timing of his termination is suspect. Despite defendants' assertions to the contrary, suspicious timing, even alone, can form the basis of a first amendment retaliation claim when the retaliatory conduct follows "close on the heels" of constitutionally protected conduct known to the individual alleged to have taken the adverse action at issue. *Kidwell*, 679 F.3d at 966 (citation omitted); *Bernero* v. *Vill. of River Grove*, No. 17 CV 05297, 2018 WL 3093337, at *5 (N.D. Ill. June 22, 2018) (recognizing that courts look to *Kidwell* for "guidance at the pleading stage" although it was decided on summary judgment).

5

Here, based on Lawrence's allegations, the maximum amount of time that could have passed between the virtual "meet and greet" on September 25 and his termination on October 5 is ten days. The period between Lawrence's protected conduct, when he notified Freeman of his decision not to retain Henyard's preferred attorney, and the alleged adverse employment action is shorter than in other cases that survived motions to dismiss. *See Bernero*, 2018 WL 3093337, at *5 (denying motion to dismiss where plaintiff was terminated "approximately two months" after publicly discussing defendant's corruption); *Conway* v. *City of Chicago*, No. 20 C 4966, 2021 WL 4206793, at *8 (N.D. Ill. Sept. 16, 2021) (denying motion to dismiss First Amendment claim where plaintiff was reprimanded "just a few months" after he refused his supervisor's orders to falsify data).

Lawrence also alleges that Henyard had been engaging in a pattern of political patronage at the time of his termination, which is circumstantial evidence of retaliation. *Schmoeller*, 324 F. Supp. 3d at 989. Lawrence identified a number of other Thorton Township employees who had been terminated for refusing to support Henyard politically and alleged that she filled his position with her relatives after his firing. Collectively, these allegations are sufficient to permit the inference that Lawrence's political non-affiliation with Henyard was a motivating factor for his firing.

## II. Defendants' Personal Involvement

Defendants argue that Lawrence's claims fail because Henyard and Freeman were not personally involved in his termination and did not direct the township's human resources department to fire him.

To hold the defendants liable under 42 U.S.C. § 1983 in their individual capacities, a plaintiff must show that the defendants were "personal[ly] involve[d] in the alleged

6

constitutional deprivation." *Colbert* v. *City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (citation omitted). To do so, a plaintiff must "demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id*. Defendants in supervisory positions are personally involved in their subordinates' constitutional violations if they "directed the conduct causing the constitutional violation, or if it occurred with [their] knowledge or consent." *Sanville* v. *McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citation omitted).

In this case, Lawrence alleges that both Henyard and Freeman had the authority to make hiring and termination decisions for Thornton Township. As such, this responsibility over personnel decisions undermines their assertion that they were not involved with Lawrence's firing. *See Drager* v. *Village of Bellwood,* 969 F. Supp. 2d 971, 977–78 (N.D. Ill. 2013) (finding plaintiff adequately pleaded personal involvement of village clerk in his termination—even though he was notified of his firing by a different village employee—because the clerk had the authority to make decisions regarding discharge of employees).

Even though Lawrence alleges he was terminated for his refusal to support Henyard, not Freeman, Freeman possessed the same hiring and firing authority as Henyard. Additionally, as Henyard's "closest and most-trusted political ally," it is plausible that Freeman would be involved in using his authority to terminate employees who did not support Henyard politically. (Dkt. 1 ¶ 23.) And as the organizer of the virtual "meet and greet" in which Lawrence was asked to retain Thorton Township's attorney for the Dolton school board, Freeman appears to have been involved in the retaliation as Henyard.

Defendants argue that because Lawrence was terminated by the human resources department, Henyard and Freeman can escape liability. Indeed, human resources personnel are typically responsible for *facilitating* hirings and firings. But supervisors cannot evade liability for

7

unconstitutional conduct by arguing that they delegated their responsibilities to human resources personnel. See *Drager*, 969 F. Supp. 2d 971, 978 (N.D. Ill. 2013) (finding that plaintiff established personal involvement of village clerk in his termination even though plaintiff learned of his termination from a different individual). Lawrence has adequately pleaded that Henyard and Freeman were personally responsible for his firing.

## CONCLUSION AND ORDER

For the reasons stated above, defendants' motion to dismiss (dkt. 14) is denied. Counts III and V are dismissed without prejudice to repleading by May 13, 2025. A status report and proposed scheduling order shall be filed by May 28, 2025. A status hearing is set for June 4, 2025 at 9:30 a.m. in courtroom 2201.

Date: April 29, 2025

_____
U.S. District Judge Joan H. Lefkow