IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY LAWRENCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-05054 |
| | ) | |
| THORNTON TOWNSHIP, an Illinois municipal corporation; TIFFANY A. HENYARD, in her individual capacity; KEITH FREEMAN, in his individual capacity, | ) ) ) ) ) ) | Hon. Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, LARRY LAWRENCE, by and through his attorneys, Griffin Williams McMahon & Walsh, LLP, and presents his First Amended Complaint against THORNTON TOWNSHIP, TIFFANY HENYARD, and KEITH FREEMAN, and in support thereof, complains as follows:

**PARTIES TO THE ACTION**

1. Plaintiff Larry Lawrence ("Mr. Lawrence") is, and at all times was, a resident of the State of Illinois, County of Cook.

2. Mr. Lawrence at times complained of was an employee of Defendant Thornton Township.

3. Defendant Thornton Township ("the Township") is a governmental subdivision and a municipal corporation headquartered in South Holland, Illinois.

4. The Township at times complained of was Ms. Lawrence's employer.

5. Defendant Tiffany Henyard ("Ms. Henyard") was at times complained of the duly elected and/or appointed Township Supervisor.

6. Ms. Henyard at times complained of was Mr. Lawrence's employer.

7. Defendant Keith Freeman ("Mr. Freeman") was at times complained of the duly appointed Chief of Staff to the Township Supervisor.

8. Mr. Freeman at times complained of was Mr. Lawrence's employer.

9. This is a civil action for damages via 42 U.S.C. § 1983 to redress deprivations under the color of law of the rights, privileges, and immunities secured under the First and Fourteenth Amendments to the United States Constitution.

## JUSRISDICTION AND VENUE

10. This Court has original jurisdiction in this matter pursuant to federal question jurisdiction, 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution, laws or treaties of the United States.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1)(2) and (d), in that the Defendants reside and may be found in this district and all the events alleged occurred within this district.

## STATEMENT OF FACTS

12. The Township is a municipal corporation located within the southern suburbs of Chicago, Illinois, County of Cook.

13. Mr. Lawrence is a long-time resident of the southern suburbs of the City of Chicago.

14. On June 11, 2001, Mr. Lawrence was hired by Thornton Township. In 2003, Mr. Lawrence assumed the position of "Youth Program Manager" in the Township's "Youth

and Family Services Department" ("YFSD"). Dr. Jerry Weems was the director and department head of the YFSD.

16. Mr. Lawrence's duties included obtaining permits for picnics, finding locations for after school programs, registering and recruiting kids for summer enrichment programs. He did not have the authority to hire or fire Township employees.

16. In or near 2008, Ms. Henyard was hired as a seasonal instructor in the summer enrichment program. Mr. Lawrence mentored Ms. Henyard in his role as Youth Program Manager.

17. In or near 2012, Ms. Henyard expressed to Mr. Lawrence a desire to get involved in politics in the Village of Dolton. Mr. Lawrence introduced Ms. Henyard to former Township Supervisor Frank Zuccarelli ("Mr. Zuccarelli"). Mr. Zuccarelli was very active in supporting south suburban political candidates.

18. Mr. Lawrence even suggested to Mr. Zuccarelli that he include Ms. Henyard on a slate of candidates running in the 2013 Village of Dolton general election. Mr. Zuccarelli agreed and arranged for her to be placed on a slate with Robert Hunt, Riley Rogers, and Stan Brown. The slate members all won, which meant Ms. Henyard, Mr. Hunt and Mr. Brown became trustees and Mr. Rogers became the Village of Dolton's mayor.

19. In or near 2017, Mr. Lawrence was elected President of the Dolton West School District 148 Board of Education ("the School Board"). The School Board was comprised of six trustees and a president.

20. In February 2021, Ms. Henyard was elected Mayor of the Village of Dolton and assumed office in May 2021.

21. On March 3, 2022, Ms. Henyard was appointed Township Supervisor, which is

the chief executive of the Township. As Township Supervisor, Ms. Henyard was Mr. Lawrence's superior and possessed final policymaking authority with respect to hiring and firing Township employees.

22. Shortly after she was appointed, Ms. Henyard appointed and employed Keith Freeman ("Mr. Freeman") as "Municipality Manager" of the Township. As Municipality Manager, Mr. Freeman was Mr. Lawrence's superior and possessed final policymaking authority with respect to hiring and firing Township employees.

23. Mr. Freeman also served as the Village Administrator for the Village of Dolton and is Ms. Henyard's closest and most-trusted political ally.

24. On several occasions throughout the summer of 2023, Ms. Henyard met with Mr. Lawrence to ask him to retain the Township Attorney as attorney for the School Board.

25. Mr. Lawrence initially responded, "Why would I do that?" Ms. Henyard replied, "You would be supporting me" and "To show support for me." Ms. Henyard intended, and Mr. Lawrence understood, the requests to indicate requests for political support. Ms. Henyard suggested the same to Mr. Lawrence several more times during the summer.

26. On or near September 21, 2023, Mr. Freeman called Mr. Lawrence and invited him to appear on a Zoom call for a "meet and greet" with the Township Attorney. Mr. Lawrence agreed.

27. On or near September 25, 2023, Mr. Lawrence logged into the Zoom call and saw School Board members Faith Gunther ("Ms. Gunther"), Peggy Woods ("Ms. Woods") and Bruce Owens ("Mr. Owens") were on the call, which would constitute a quorum of School Board members and trigger the procedural requirements of the Open Meetings Act ("OMA").

28. Neither Mr. Lawrence nor the other School Board members present knew in

advance who would be present for the call. Mr. Freeman and the Township Attorney were also present for the call.

29. Ms. Gunther and Mr. Owens' Zoom links were muted by the host in an apparent attempt to circumvent the mandates of the ("OMA").

30. Prior to the meeting, Ms. Henyard and Mr. Freeman believed three of the current School Board members would vote in favor of appointing the Township Attorney as attorney for the School Board. They viewed appointing the Township Attorney as an act of political support and affiliation with Ms. Henyard and that a vote in favor from Mr. Lawrence would constitute the required majority.

31. During the meeting, Mr. Freeman asked Mr. Lawrence whether he would vote in favor of retaining the Township Attorney to act as attorney for the School Board. Mr. Lawrence responded that he would present the issue to the School Board to obtain feedback but that he would not vote in favor of retaining the Township Attorney because he was pleased with the School Board's current counsel. The Township Attorney was visibly upset and left the Zoom meeting abruptly.

32. Within a few days, Mr. Lawrence and the rest of the School Board met in closed session in part to discuss Ms. Henyard and Mr. Freeman's request to retain the Township Attorney. Shortly thereafter, Mr. Lawrence notified Mr. Freeman that the School Board was not going to retain the Township's attorney.

33. On October 5, 2023, Mr. Lawrence received an email from the Township's human resources department noting that his employment would be terminated after twenty-two years. On October 6, 2023, Mr. Lawrence was terminated from employment without any legitimate or lawful basis, and without a pre- or post-termination hearing.

34. Mr. Lawrence was terminated by Mr. Freeman and Ms. Henyard in retaliation for refusing to support Ms. Henyard politically and not associating with Ms. Henyard politically.

35. At or near the same time, Ms. Henyard terminated Mr. Owens from the position he held with the Village of Dolton in retaliation for refusing to support her politically.

36. At or near the same time, Dwayne Thrash ("Mr. Thrash") was the President of Thornton Township Trustees of Schools and employed as "Director of Maintenance" for the Township. Ms. Henyard terminated Mr. Thrash after he refused to retain the Township Attorney to act on behalf of the Thornton Township Trustees of Schools.

37. The Township ultimately continued the youth programs with Ms. Henyard's sister-in-law Rosie Red Henyard and later another relative taking over Mr. Lawrence's responsibilities.

38. Mr. Lawrence was never disciplined throughout the twenty-two years he worked for the Township.

39. Party affiliation is not an appropriate requirement for the position of Youth Program Manager.

40. Ms. Henyard and Mr. Freeman terminated the employment of numerous other Township and Village of Dolton employees who refused to support Ms. Henyard politically including, but not limited to, Aris Montgomery, Matthew Stacey, Parris Dawson, Elizabeth Scott, Kashika Manning, Karen Johnson, and Lavelle Redmond.

41. As a result of the Township, Ms. Henyard, and Mr. Freeman retaliating against Mr. Lawrence for declining to associate with Ms. Henyard politically, Mr. Lawrence suffered lost wages of over $50,000.00, attorney fees, and lost pension benefits.

## COUNT I

## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO FREE SPEECH VIA 42 U.S.C. § 1983 AGAINST THORNTON TOWNSHIP

42. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

43. The Township terminated Mr. Lawrence's employment in retaliation for exercising protected political speech in refusing to support Ms. Henyard.

44. Mr. Lawrence's exercise of protected political speech in refusing to support Ms. Henyard is an activity protected by the First Amendment.

45. The Township is responsible for the deprivation of Mr. Lawrence's First Amendment rights.

46. The Township was acting under the color of law when depriving Mr. Lawrence of his First Amendment rights.

47. As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant THORNTON TOWNSHIP for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT II

### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO ASSOCIATE VIA 42 U.S.C. § 1983 AGAINST THORNTON TOWNSHIP

48. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

49. The Township terminated Mr. Lawrence in retaliation for exercising his right to not associate with Ms. Henyard politically.

50. Mr. Lawrence's refusal to associate with Ms. Henyard politically is an activity protected by the First Amendment.

51. The Township was responsible for the deprivation of Mr. Lawrence's First Amendment rights.

52. The Township was acting under color of law when depriving Mr. Lawrence of his First Amendment rights.

53. As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant THORNTON TOWNSHIP for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

**COUNT III**

**RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO FREE SPEECH VIA 42 U.S.C. § 1983 AGAINST TIFFANY HENYARD**

54. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

55. Mr. Lawrence understood that Ms. Henyard expected him to retain the Township attorney for the School Board as an act of political loyalty.

56. Mr. Lawrence's response during the Zoom call, that he would not vote in favor of retaining the Township Attorney, constituted protected political speech indicating that he was not complying with Ms. Henyard's political request, and thereby not supporting Ms. Henyard politically, or was regarded as protected political speech indicating that he was not supporting Henyard.

57. Mr. Lawrence's response to Mr. Freeman, that the School Board was not going to retain the Township's attorney, also constituted protected political speech indicating that he was not supporting Ms. Henyard politically, or was regarded as protected political speech, indicating that he was not supporting Ms. Henyard politically.

58. Mr. Lawrence's refusals were, upon information and belief, communicated from Mr. Freeman to Ms. Henyard.

59. Ms. Henyard caused Mr. Lawrence to be terminated in retaliation for exercising said protected political speech in refusing to appoint the Township Attorney and thereby support Ms. Henyard.

60. Mr. Lawrence's exercise of protected political speech in voicing his refusal to support Ms. Henyard politically are activities protected by the First Amendment.

61. Ms. Henyard is responsible for the deprivation of Mr. Lawrence's First

9

Amendment rights.

62. Henyard was acting under the color of law when depriving Mr. Lawrence of his First Amendment rights.

63. As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant TIFFANY HENYARD for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT IV

### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO ASSOCIATE VIA 42 U.S.C. § 1983 AGAINST TIFFANY HENYARD

64. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

65. Ms. Henyard terminated Mr. Lawrence in retaliation for exercising his right to not associate with her politically.

66. Mr. Lawrence's refusal to associate politically with Ms. Henyard is an activity protected by the First Amendment.

67. Ms. Henyard is responsible for the deprivation of Mr. Lawrence's First Amendment rights.

68. Ms. Henyard was acting under color of law when depriving Mr. Lawrence of his First Amendment rights.

69. As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant TIFFANY HENYARD for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT V

### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO FREE SPEECH VIA 42 U.S.C. § 1983 AGAINST KEITH FREEMAN

70. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

71. Mr. Freeman caused Mr. Lawrence to be terminated in retaliation for exercising protected political speech in refusing to support Ms. Henyard.

72. Mr. Lawrence's response during the Zoom call, that he would not vote in favor of retaining the Township Attorney, constituted protected political speech indicating that he was not complying with Ms. Henyard's political request, and thereby not supporting Ms. Henyard politically, or was regarded as protected political speech indicating that he was not supporting Ms. Henyard.

73. Mr. Lawrence's response to Mr. Freeman that the School Board was not going to retain the Township's attorney also constituted protected political speech indicating that he was not supporting Ms. Henyard, or was regarded as protected political speech indicating that he was not supporting Ms. Henyard.

74. Mr. Lawrence's exercise of protected political speech in refusing to support Ms. Henyard politically are activities protected by the First Amendment.

75. Mr. Freeman is responsible for the deprivation of Mr. Lawrence's First Amendment rights.

76. Mr. Freeman was acting under the color of law when depriving Mr. Lawrence of his First Amendment rights.

77. As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant KEITH FREEMAN for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT VI

**RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO ASSOCIATE VIA 42 U.S.C. § 1983 AGAINST KEITH FREEMAN**

78. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

79. Mr. Freeman terminated Mr. Lawrence in retaliation for exercising his right to not associate with Ms. Henyard politically.

80. Mr. Lawrence's refusal to associate politically with Ms. Henyard is an activity protected by the First Amendment.

81. Mr. Freeman is responsible for the deprivation of Mr. Lawrence's First

Amendment rights.

82.     Mr. Freeman was acting under color of law when depriving Mr. Lawrence of his First Amendment rights.

83.     As a result of the aforementioned deprivation of federal rights, Mr. Lawrence suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant KEITH FREEMAN for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT VII

## MONELL CLAIM VIA 42 U.S.C. § 1983

84.     Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through forty-one as if fully set forth herein.

85.     The Township maintains a widespread practice of terminating employees who refuse to support Ms. Henyard politically.

86.     Ms. Henyard was the final policymaker at the Township with respect to hiring and firing Township employees.

87.     Mr. Freeman was also a final policymaker at the Township with respect to hiring and firing Township employees.

88.     Each act of Ms. Henyard and Mr. Freeman described above constituted a policy of the Township to retaliate against those who refuse to engage in protected speech in support of

Ms. Henyard or who refuse to associate politically with Ms. Henyard.

89. As a result of employing a custom, policy or practice espoused by the Township to retaliate against those who engage in protected political speech or association, Mr. Lawrence suffered the aforementioned deprivation of federal rights and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, Plaintiff LARRY LAWRENCE demands judgment be entered in his favor and against Defendant THORNTON TOWNSHIP for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## JURY DEMAND

90. Mr. Lawrence demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP

By: */s/ Patrick J. Walsh*
      Patrick J. Walsh, Esq.

Patrick J. Walsh, Esq.
GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP
21 North Fourth Street
Geneva, Illinois 60134
(630) 457-4242
ARDC. No. 6287629
pwalsh@gwmwlaw.com